**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| PINEBROOK HOLDINGS LLC., | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  Case No. |
| | ) |
| | ) |
| UNITED STATES SMALL BUSINESS | ) |
| ADMINISTRATION; ISABELLA CASILLAS | ) |
| GUZMAN, in her official capacity as | ) |
| Administrator of the United States Small | ) |
| Business Administration; JANET YELLEN, in | ) |
| Her official capacity as United States Secretary | ) |
| Of Treasury; and THE UNITED STATES OF | ) |
| AMERICA, | ) |
| | ) |
| Respondents. | ) |

## PETITION FOR JUDICIAL REVIEW

Petitioner Pinebrook Holdings, LLC ("Pinebrook" or "Petitioner"), through counsel, hereby submits this Petition for Judicial Review against Respondents the United States Small Business Administration and Isabella Casillas Guzman, in her official capacity as Administrator of the United States Small Business Administration (collectively, the "SBA"), together with Janet Yellen, in her official capacity as United States Secretary of Treasury, and the United States of America.

## INTRODUCTION

1.      Pinebrook brings this action pursuant to the Administrative Procedure Act ("APA"), 5 U.S.C. § 706, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

2.      A true and accurate copy of the underlying administrative record is attached to this Petition as AR000001-1126.

1

3.      In early 2020, Congress responded to the COVID-19 Pandemic by enacting the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") (Pub. L. 116-136, 134 Stat. 281).

4.      Sections 1102 and 1106 of the CARES Act established the Paycheck Protection Program ("PPP"), to be administered by the SBA.

5.      As the SBA itself has recognized, the intent of the CARES Act was to assist eligible businesses impacted by the pandemic. *See* 86 Fed. Reg. 51589–90 (explaining the CARES Act was designed "to provide relief to America's small businesses expeditiously," at a time when "many small businesses nationwide have experienced and continue to experience economic hardship" and "a dramatic decrease in economic activity" related to the COVID-19 Pandemic).

6.      Pinebrook, a holding and investment company for a number of entities engaged in a variety of businesses, including payment processing, operations management services, land development, rental properties, farming, consumer lending, and clearing and settlement services.

7.      Pinebrook demonstrated its eligibility for a PPP loan in its PPP application to the SBA on April 3, 2020 (the "Application"). *See* AR000022-27.

8.      The Application was prepared and submitted with the assistance of lender Royal Banks of Missouri. *See id.*

9.      In confirmation of Pinebrook's eligibility, the SBA approved the Application in the amount of $1,168,976.00.

10.     When Pinebrook applied for forgiveness, however, the SBA determined Pinebrook "was ineligible for the PPP loan" because "Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing and or factoring." *See* AR000075-77.

11.     Pinebrook appealed SBA's denial of forgiveness to the Office of Hearings and Appeals (the "OHA").

12.     On June 29, 2023, the OHA denied Pinebrook's appeal and concluded that the Final SBA Loan Review Decision was not clearly erroneous.

13.     Accordingly, Pinebrook now seeks judicial review of the OHA's erroneous conclusion that Pinebrook was not eligible for forgiveness.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction of this dispute under 5 U.S.C. § 702; 15 U.S.C. § 634(b)(1); and 28 U.S.C. §§ 1331 and 2201.

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(e) and 5 U.S.C. § 703 because Petitioner resides in this judicial district.

16.     This Court has authority to issue declaratory and injunctive relief under 5 U.S.C. § 706 and 28 U.S.C. §§ 2201 and 2202.

17.     The OHA dismissed Pinebrook's appeal and affirmed the Final SBA Loan Review Decision on June 29, 2023.

18.     Pinebrook is therefore entitled to judicial review of the OHA's final decision. *See* 13 C.F.R. § 134.1201(d) ("An appeal to OHA is an administrative remedy that must be exhausted before judicial review of a final SBA loan review decision may be sought in a Federal district court."); *see also* § 134.1211(g) ("Final decisions may be appealed to the appropriate Federal district court only.")

## PARTIES

19.     Pinebrook is a Missouri Limited Liability Corporation that is a holding and investment company for a number of business entities.

3

20.     The United States Small Business Administration is an independent federal agency created and authorized under 15 U.S.C. § 633 *et seq.*

21.     Isabella Casillas Guzman is the Administrator of the United States Small Business Administration. She is named a party to this action in her official capacity only. Because she is the officer with final authority for administering the PPP within the SBA, Administrator Guzman is a proper defendant for these APA causes of action.

22.     Janet Yellen is the Secretary of the United States Department of Treasury. She is named a party to this action in her official capacity only.

23.     The United States of America is a proper defendant in a case brought under the APA. *See* 5 U.S.C. § 702.

## BACKGROUND

### *PPP Loan Program*

24.     Congress entrusted the administration of the PPP to the SBA, providing specific instructions regarding the scope of businesses eligible for a PPP loan:

> **(D)   INCREASED ELIGIBILITY** FOR CERTAIN SMALL BUSINESSES AND ORGANIZATIONS.—
>
> > (i) IN GENERAL.—During the covered period, in addition to small business concerns, *any business concern,* nonprofit organization, veterans organization, or Tribal business concern described in section 31(b)(2)(C) *shall be eligible to receive a covered loan if the business concern,* nonprofit organization, veterans organization, or Tribal business concern *employs not more than* the greater of—
>
> > (I)    *500 employees;* or
> > (II)   if applicable, the size standard in number of employees established by the Administration for the industry in which the business concern, nonprofit organization, housing cooperative, veterans organization, or Tribal business concern operates.

15 U.S.C. § 636(a)(36)(D)(i) (emphasis added).

4

25.     For an eligible entity, the purpose of the PPP loan program was to assist with certain business-related expenses, including payroll, mortgage or lease payments, and utility payments. *See* 15 U.S.C. § 636(a)(36)(F).

26.     PPP loans issued under the CARES Act would be eligible for forgiveness to the extent they were used for these specific business expenses. 15 U.S.C. § 636m(b).

27.     Recognizing the exigencies of the pandemic, Congress permitted the SBA to "issue regulations to carry out [the CARES Act]" without requiring compliance with the notice requirements that are usually part of the rulemaking process. 15 U.S.C. § 9012 (citing 5 U.S.C. § 553(b)).

28.     Effective April 15, 2020, these interim regulations incorporated eligibility restrictions the SBA issued decades ago, in connection with Section 7(a) loans, a completely different lending scheme with entirely different purposes. 85 Fed. Reg. 20811–01.

29.     Contrary to Congress's expansive language, the SBA stated that businesses ineligible for a conventional Section 7(a) loan would also be ineligible for a PPP loan. *See id.*

30.     These eligibility restrictions under Section 7(a) list nearly 20 types of small businesses that are categorically ineligible to receive a Section 7(a) loan—including "[f]inancial business primarily engaged in the business of lending, such as banks, finance companies, and factors (pawn shops, although engaged in lending, may qualify in some circumstances)." 13 C.F.R. § 120.110(b).

31.     In this way, the SBA decided that certain types of businesses would be ineligible for a PPP loan, even if they met every requirement set out by Congress.

32.     Neither the PPP, nor the Application stated that businesses engaged in consumer lending were ineligible to receive a PPP loan. In fact, the U.S. Department of the Treasury

specifically recognized lending businesses and electronic payment processing businesses as critical infrastructure that needed to stay open during the pandemic. *See, e.g.,* U.S. Dep't of the Treasury, March 24, 2020 Statement by Secretary Steven T. Mnuchin on Essential Financial Services Workers, available at https://home.treasury.gov/news/press-releases/sm956.

33.     In addition, neither the PPP nor the Application indicated that the SBA could later decide that a borrower was ineligible after a PPP loan had been approved and fully funded.  Yet, that is exactly what happened to Pinebrook.

34.     The SBA improperly applied its previously-issued regulation to find that Pinebrook was ineligible for PPP loan forgiveness after receiving a PPP loan in the first place. This is contrary to the plain language of the CARES Act and Pinebrook's justifiable reliance on the issuance of the loan.

### *Pinebrook Receives a PPP Loan*

35.     The COVID-19 pandemic made it impossible for Pinebrook to maintain its business operations and keep employees on payroll.

36.     Believing in good faith that it was eligible for a PPP Loan based on the express language of the CARES Act and the Application, Pinebrook applied for a loan in the amount of $1,168,976.00 to retain its 128 employees and maintain payroll for the same.

37.     Pinebrook reviewed and signed the borrower application form, which included various certifications and authorizations, on April 3, 2020. *See* AR000022-27.

38.     On April 16, 2020, Royal Banks of Missouri issued SBA PPP Loan Number 7839427010, with the terms of the Note providing a fixed interest rate of 1.00% and a 24-month maturity date ending on April 16, 2022.  *See* AR000028-39.

39.     The Loan Forgiveness Disclosure attached to the Note advised Pinebrook that "[t]he SBA Payroll Protection Program (PPP) loan can be forgiven in whole or in part up to the full principal amount of the loan and any accrued interest *if the borrower uses all of the loan proceeds for forgivable purposes and employee and compensation levels are maintained.*" U.S. Small Business Administration Note, AR000035 (emphasis added).

40.     Pinebrook adhered to all PPP requirements governing use of the funds and used the loan proceeds strictly for payroll, which was an approved business-related purpose. *See* Dec. of Tammy Graning, attached as AR000040-42.

### *Pinebrook's NAICS Code and Loan Forgiveness Eligibility*

41.     In or around December 2020, Pinebrook applied to the SBA for loan forgiveness.

42.     The Loan Forgiveness Application was the first document that mentioned that the SBA, not the lender, would determine whether "the Borrower was ineligible for the PPP loan." See AR000043-62.

43.     In reviewing Pinebrook's eligibility for forgiveness of the PPP loan, the SBA asserted a potential issue related to possible lending activities. *See* July 29, 2021 Letter from SBA to Michael Stevenson, attached as AR000063-66.

44.     The SBA requested additional documents and information from the Royal Banks of Missouri. Specifically, it requested the following: (1) verification of NAICS Code, (2) a description of Pinebrook's business activities, and (3) a 2019–2020 Profit and Loss Statement. *See id.*

45.     Pinebrook diligently responded to SBA's requests, clarifying that consumer lending was only one business activity in which its subsidiaries were engaged and advising the SBA that

Pinebrook intended to obtain a new NAICS code that properly categorized the company. *See* Aug. 10, 2021 Letter from Pinebrook to SBA, attached as AR000067-72.

46.     In addition, Pinebrook noted that it likely would not have been able to retain its employees or keep payroll at the levels it did had it not received the PPP loan. *See id*.

47.     Pinebrook also prepared a supplemental response to the SBA explaining that it had, in fact, obtained a new NAICS code. *See* Sept. 1, 2021 Letter from Pinebrook to SBA, attached as AR000073-74.

48.     Royal Banks accepted Pinebrook's loan forgiveness application and submitted it to the SBA for final approval. However, on January 4, 2022, after reviewing the supplemental information provided by Pinebrook the SBA rejected Royal Bank's approval recommendation and denied Pinebrook's application for loan forgiveness. *See* Jan. 4, 2022 SBA Loan Review Decision, attached as AR000075-77.

49.     On January 4, 2022, the SBA determined that Pinebrook "was ineligible for the PPP loan" because "Borrower is a financial business primarily engaged in lending, investments or an ineligible business engaged in financing and or factoring." In support of its conclusion, the SBA cited the change in NAICS code to 523900 and a statement that "the Borrower is an investment company for a number of entities engaged in a variety of businesses." *Id*.

50.     On February 8, 2023, Pinebrook appealed the Final Loan Review Decision to the OHA pursuant to 13 C.F.R. § 134.1201(b).

51.     On June 29, 2023, OHA entered an order (the "OHA Decision") denying Pinebrook's appeal and affirming the Final SBA Loan Review Decision. AR001114-1126.

## CLAIMS FOR RELIEF

52.     The APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.

53.     The APA provides that "final agency action for which there is no other adequate remedy in a court" is "subject to judicial review." 5 U.S.C. § 704.

54.     The APA provides that courts will "hold unlawful and set aside" agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence," as well as "compel agency action unlawfully withheld." 5 U.S.C. §§ 706(1) and (2)(A), (E).

## COUNT I

### Claim for Declaratory and Injunctive Relief
### for Agency Action Contrary to Law (CARES Act)

55.     Pinebrook incorporates the allegations of paragraphs 1 through 54 of this Petition by reference, as though fully set forth herein.

56.     The OHA held that it was not a clear error for the SBA to conclude that Pinebrook was ineligible for the PPP loan it received.

57.     This decision was contrary to law.

58.     The statute governing loan forgiveness defines an "eligible recipient" as "the recipient of a covered loan." 15 U.S.C. § 636m(a)(10).

59.     A "covered loan" means "a loan guaranteed under section 636(a)(36) of this title." *Id.* at 636m(a)(1).

60.     Therefore, as a recipient of a covered loan, Pinebrook is eligible for forgiveness:

(b) FORGIVENESS. An **eligible recipient** shall be **eligible for forgiveness** of indebtedness on a covered loan in an amount equal to the sum of the following costs incurred and payments made during the covered period:

(1) Payroll costs.

* * *

15 U.S.C. § 636m(b).

61.     In the face of this plain Congressional mandate—that recipients of PPP loans who use their loans for payroll costs are eligible for forgiveness—the SBA determined and the OHA affirmed that because some of Pinebrook's subsidiaries are engaged in investment and lending, it is categorically ineligible for forgiveness.

62.     This is contrary to the plain statutory language of the CARES Act. Having received a PPP loan in the first place, and having complied with all other documentation and cost requirements, Pinebrook is eligible for forgiveness of its PPP loan.

63.     Further, the OHA's decision finds that Pinebrook should not have received a PPP loan in the first place. This finding directly conflicts with the CARES Act provision that PPP loans are to be made available to "any business concern" meeting the CARES Act size requirement, that is, less than 500 employees. 15 U.S.C. § 636(a)(36)(D)(i).

64.     As the United States Supreme Court recently noted in its interpretation of another empowering statute, "the duty of an administrative agency is to follow its commands as written, not to supplant those commands with others it may prefer." *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1355 (2018).

65.     The Supreme Court found that the term "any" in an empowering statute "ordinarily refers to a member of a particular group or class without distinction or limitation," and "implies *every* member of the class or group." *Id.* at 1354 (internal quotations and citations omitted)

10

(interpreting a statute providing that an agency "shall" resolve "any" claim to mean that the agency "*must* address *every* claim the petitioner has challenged").

66.     Under this guidance, "any business" actually does mean "every business."

67.     Further, Congress reinforced its intent that the first round of PPP loans under the CARES Act were available to "any" business meeting Congress' requirements when it later authorized the SBA to issue "second draw" PPP loans to a more exclusive group of businesses. Pub. L. 116–260, 134 Stat. 1182. For this subsequent loan regime, Congress expressly excluded entities disqualified under 13 C.F.R. § 120.110. *See* 15 U.S.C. § 636(a)(37)(A)(III)(aa) (providing that the term "covered entity" "does not include . . . (aa) any entity that is a type of business concern (or would be, if such entity were a business concern) described in section 120.110 of title 13, Code of Federal Regulations . . . other than a business concern described in subsection (a) or (k) of such section").

68.     The presence of this exclusionary language for "second draw" or "second round" PPP loans reinforces the conclusion that Congress deliberately omitted any exclusions for the first draw or first round PPP loans—that the initial uncertainties of the pandemic and the need "for as many Americans to stay home as possible" called for the broadest possible economic assistance. 166 Cong. Rec. H1732, H1818; *see also DV Diamond Club of Flint, LLC v. Small Bus. Admin.*, 960 F.3d 743, 746 (6th Cir. 2020) (denying motion to stay pending appeal on the ground that "the Act's specification that 'any business concern' is eligible, so long as it meets the size criteria, is a reasonable interpretation. That broad interpretation also comports with Congress's intent to provide support to as many displaced American workers as possible.").

69.     For these reasons, a court in the Sixth Circuit recently decided that the SBA's eligibility rules as applied to home builders and real estate developers are invalid as a matter of

law. *Nat'l Ass'n of Home Builders v. United States Small Bus. Admin.*, No. 20-11780, 2021 WL 4458660, at *1 (E.D. Mich. Sept. 28, 2021). Specifically, the court ordered that:

> [T]he SBA's rules declaring ineligible for PPP loans, loan guarantees, and loan forgiveness "[p]assive businesses owned by developers and landlords that do not actively use or occupy the assets acquired or improved with the loan proceeds," 13 C.F.R. § 120.110(c), or "[s]peculative businesses," 13 C.F.R. § 120.110(s), exceed its statutory authority under the CARES Act and are **DECLARED** invalid.

*Id.* at *11.

70.     The court further ordered that the SBA was *prohibited* from disqualifying the home builders and real estate developers from receiving loan forgiveness on the ground that they belonged to the types of businesses set out in 13 C.F.R. §§ 120.110(c) or (s). *Id.* at *12.

71.     In that case, the court reasoned that the SBA's interpretation of the CARES Act "purporting to import historical regulatory disqualifications into the eligibility criteria for PPP loans squarely contradicts the express language defining eligibility that was enacted by Congress." *Id.* at * 7.

72.     The court found that Congress' intent on this matter was clear, and the SBA's rules failed to give effect to this unambiguously expressed intent, emphasizing "the distinctly different and more detailed language that Congress used in the subsequent enactment" of statutes related to "second draw" loans:

> The adoption of that language in the subsequent enactment proves that <u>Congress was, and is, well aware of the regulatory background against which the original PPP was created, and that when it desires to do so it knows exactly how to adopt and endorse previously issued regulatory qualifications</u>. **<u>The fact that it did not do so when it authorized the first PPP program reinforces the conclusion that the choice to promulgate its own separate, simplified, all-inclusive — and, at least as to entity type and size, entirely exclusive — eligibility criteria was both reasoned and deliberate</u>**.

*Id.* at *7, *10 (citations omitted) (emphasis added).

73.     The U.S. Court of Appeals for the Sixth Circuit similarly rejected the argument that because the CARES Act specifies that "nonprofit organization[s]" are eligible for PPP loans, when they are normally ineligible for ordinary SBA loans, Congress only meant to expand eligibility to nonprofit organizations, reasoning that "[i]t was necessary to specify non-profits because they are not businesses, whereas the Act's specification that eligibility is conferred on "any business concern" encompasses sexually oriented businesses such as strip clubs that would ordinarily be ineligible for loans." *DV Diamond Club of Flint, LLC v. United States Small Bus. Admin.*, 960 F.3d 743, 746–47 (6th Cir. 2020) (denying motion to stay pending appeal); *see also Camelot Banquet Rooms, Inc. v. United States Small Bus. Admin.,* 458 F. Supp. 3d 1044, 1056 (E.D. Wis. 2020), *appeal dismissed*, No. 20-1729, 2020 WL 6481792 (7th Cir. Aug. 5, 2020) (discussing "Congress's clear intent to extend PPP loans to all small businesses affected by the pandemic").

74.     The SBA should not be permitted to deny Pinebrook's application for loan forgiveness on the ground that it belongs to a type of business set out in 12 C.F.R. § 120.110(b), in contravention of Congress' clear language and intent to the contrary.

75.     The OHA's denial of Pinebrook's appeal on the ground that Pinebrook was not an eligible recipient is an abuse of discretion and/or violated the Act and is contrary to law.

## COUNT II

### Claim for Declaratory and Injunctive Relief
### For Agency Action Contrary to Law (Interim Regulations)

76.     Pinebrook incorporates the allegations of paragraphs 1 through 75 of this Petition by reference, as though fully set forth herein.

77.     The OHA concluded that the interim regulation applying Section 7(a) loan restrictions to PPP loans applied to Pinebrook.

78.     This decision was contrary to law.

79.     The interim regulation applying Section 7(a) loan restrictions to PPP loans went into effect after Pinebrook applied for its PPP loan.

80.     At the time Pinebrook applied for its loan (April 3, 2020), Congress' guidance was clear: "any business concern" with fewer than 500 employees was eligible for PPP relief. Pub. L. 116–136, 134 Stat. 281.

81.     The SBA's Information Sheet for Borrowers was also consistent with this mandate. *Paycheck Protection Program (PPP) Information Sheet: Borrowers* (issued Mar. 31, 2020) (available at https://home.treasury.gov/system/files/136/PPP--Fact-Sheet.pdf).

82.     It was not until April 15, 2020, that the SBA published its interim rules narrowing the scope of eligible businesses by referencing 13 C.F.R. § 120.110, with the rules going into effect the same day. 85 Fed. Reg. 20811–01; *see also Nat. Res. Def. Council v. U.S. Dep't of Energy*, 362 F. Supp. 3d 126, 152 (S.D.N.Y. 2019) (observing that no rule is effective until after an agency has published it in the Federal Register).

83.     Case law confirms that an agency's rules may only apply prospectively, unless Congress has expressly authorized retroactive application. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). Absent that congressional authority, an administrative rule is impermissibly retroactive if it "changes the law in a way that adversely affects [a party's] prospects for success on the merits of the claim" or "attaches new legal consequences to events completed before its enactment." *Nat'l Min. Ass'n v. Dep't of Labor*, 292 F.3d 849, 859 (D.C. Cir. 2002) (internal quotation marks and citations omitted).

84.     In *Nat'l Min. Ass'n*, for example, the U.S. Court of Appeals for the D.C. Circuit found a Department of Labor rule creating a rebuttable presumption for certain disability claims was impermissibly retroactive as applied to claims that were already pending. *Id.* This is because

the rule "change[d] the legal landscape" and was "likely to increase liability" for these pending claims. *Id.* (citations omitted).

85.     The Section 7(a) interim rules are therefore inapplicable to Pinebrook, to the extent they seek to impose new requirements retroactively and the OHA's conclusion that they applied to Pinebrook was an abuse of discretion and/or violated the Act and is contrary to law.

## COUNT III

### Claim for Declaratory and Injunctive Relief
### for Arbitrary and Capricious Agency Action (Interim Regulations)

86.     Pinebrook incorporates the allegations of paragraphs 1 through 85 of this Petition by reference, as though fully set forth herein.

87.     The interim regulations are arbitrary and capricious, because the SBA provided no explanation for excluding certain businesses while allowing others.

88.     For example, the SBA arbitrarily revised its interim rule to permit legal gambling businesses to receive PPP loans (they would otherwise be ineligible under 13 C.F.R. § 120.110(g)).

89.     This revision recognized that "the policy aim" of the CARES Act was to "mak[e] PPP loans available to a broad segment of U.S. businesses." 85 Fed. Reg. 23450–01.

90.     Yet the SBA continued to incorporate other eligibility requirements of 13 C.F.R § 120.110 without any rational basis.

91.     The SBA arbitrarily applied these eligibility requirements to Pinebrook, while exempting other traditionally disqualified businesses with no apparent basis in the statutory mandate.

92.     This was contrary to the plain language and the stated intent of the Cares Act and arbitrary and capricious under the APA.

15

93.     Additionally, the APA requires an agency to provide sufficient reasons for treating similar situations differently.

94.     The only apparent rationale for the Section 7(a) regulation's prohibition on first draw PPP Loans to businesses engaged in investment and lending comes from a predecessor regulation: "Applicants that are otherwise eligible become ineligible where the purpose of the Financial Assistance is **to finance investments that are neither related nor essential to the enterprise**. . . ." 13 C.F.R. § 120.101-2(e) (repealed), 1997 Code of Federal Regulations Archive, attached as AR000078-81.

95.     Thus, proceeds of the loan are not intended to *finance* investment or lending activities. This rationale is wholly inapplicable in the context of the PPP, where proceeds are limited to payroll and other operational costs, *see* 15 U.S.C. § 636(a)(36)(F)(i)—especially where Pinebrook informed the SBA that it spent its entire PPP loan on payroll (and zero dollars on financing investment or lending). *See* AR000043-62.

96.     The SBA has not provided any rationale for treating Pinebrook differently from other businesses, like gambling businesses, that received PPP loan funds.

## COUNT IV

### Claim for Declaratory and Injunctive Relief
### for Arbitrary and Capricious Agency Action (NAICS Code)

97.     Pinebrook incorporates the allegations of paragraphs 1 through 96 of this Petition by reference, as though fully set forth herein.

98.     The OHA found that Pinebrook's NAICS Code disqualified it from receiving a PPP loan and that Pinebrook's arguments that the SBA should be estopped from denying its loan forgiveness application because it had forgiven others with the same NAICS code was inapplicable.

99.     This decision was contrary to law because numerous companies with the same NAICS code were approved for loan forgiveness, ***including holding and investment companies just like Pinebrook,*** and because the SBA engaged in conduct that meets the requirements of estoppel.[1]

100.    Congress promised that "if you keep your workers on the payroll, that portion of the loan will be forgiven." 166 Cong. Rec. H1732, H1819. This promise was reinforced in Congress' statutory language, the SBA's own regulations, and the SBA's PPP loan application form. *See, e.g.,* 15 U.S.C. § 636m(b); 85 F.R. 20813–14 (affirming "the Act's overarching focus on keeping workers paid and employed"); AR000022-27.

101.    Yet despite Pinebrook being approved for a PPP loan and spending all of it on payroll, *see* AR000040-42, the SBA denied Pinebrook's application for loan forgiveness on the ground that Pinebrook should not have been approved for a PPP loan in the first place.

102.    When applying for the PPP loan and for loan forgiveness, Pinebrook listed its NAICS Code as 522291 (consumer lending).

103.    Pinebrook was never advised by the bank or the SBA during the application process that this NAICS Code could potentially disqualify Pinebrook from receiving a PPP loan.

104.    Nevertheless, the SBA later relied on the 522291 code to determine that Pinebrook may never have been eligible to receive the PPP loan in the first place.

---

[1] See, e.g.: Instant Payday Loans,  *Tracking PPP, Usio Inc.*
(https://projects.propublica.org/coronavirus/bailouts/loans/usio-inc-8348187010); Cliff's Payday Loans, Inc., *Tracking PPP, Cliff's Payday Loans, Inc.*
(https://projects.propublica.org/coronavirus/bailouts/loans/cliff-s-payday-loans-inc-3449747302).

105.    In consultation with an independent accounting firm, Pinebrook adopted the NAICS Code 523900 (other financial investment activities) and notified the SBA that it had erred when it originally selected its NAICS code.

106.    The SBA's approval of other companies with the same NAICS code, while denying Pinebrook's forgiveness application on the ground of that very NAICS code, is the definition of arbitrary and capricious.

107.    Moreover, the SBA cannot state one reason for possible denial, have that reason addressed, and then rely on a completely separate reason in ultimately denying Pinebrook's forgiveness application.

108.    Estoppel may be invoked against a government agency when (1) the agency has engaged in conduct beyond "mere negligence," (2) the government's misconduct will cause a "serious injustice," and (3) holding the agency liable will not impose "undue damage" on the public interest. *Purcell v. United States*, 1 F.3d 932, 939 (9th Cir. 1993). "

109.    Estoppel may be appropriate where an individual's interest in honorable, reliable dealings with the government outweighs the government's interest in enforcing the law free from estoppel." *Bd. of Cty. Comm'rs of Cty. of Adams v. Isaac*, 18 F.3d 1492, 1498–99 (10th Cir. 1994) (citations omitted).

110.    The SBA's abrupt reversal of position regarding Pinebrook's eligibility goes beyond mere negligence and would cause a serious injustice. It would be manifestly unjust to require Pinebrook to pay back a loan it never would have received if the SBA's policy remained consistent. If Pinebrook had known it would not qualify for loan forgiveness, it would not have taken on the obligation of more than $1.1 million to retain employees, but would have laid off or let employees go to remain operational during the pandemic.

111.    The forgiveness of some consumer lender and financial business borrowers but not others is the definition of injustice: it appears to be nothing more than the unprincipled, arbitrary, unfair treatment of similarly-situated businesses. The SBA should be estopped from this disparate treatment, as it is neither just nor in the public interest.

112.    Indeed, imposing estoppel against the SBA would not damage the public interest; it would serve it. The PPP loans were issued on a first-come, first-served basis, with a finite amount of funds available and the government's commitment to forgive all loans that were properly used on payroll.

113.    Pinebrook used its loan proceeds in precisely this way: to keep more than 100 employees on payroll. Pinebrook's interest in honorable, reliable dealings with the government outweighs whatever interest the SBA may have in enforcing its misguided eligibility requirements in these circumstances.

114.    The SBA affirmatively processed Pinebrook's loan application, with the clear understanding that the loan would be forgiven if the funds were used as directed. While Pinebrook was informed of the possibility the loans might be only partially forgiven, this was similarly grounded in use of the funds: if the funds were used for something other than payroll, property, or utility costs, the borrower would be responsible for repaying some or all of the loan proceeds. *See* Application.

115.    The entirety of Pinebrook's loan was properly used for payroll costs, so Pinebrook's loan should be forgiven as promised.

116.    OHA's dismissal of Pinebrook's appeal on the grounds that other PPP loan recipients had received forgiveness of their loans and that the SBA could not be estopped was an abuse of discretion and/or violated the Act and is contrary to law.

## PRAYER FOR RELIEF

WHEREFORE, Pinebrook respectfully requests declaratory and injunctive relief consistent with that described in Pinebrook's causes of action herein and for such other and further relief as is deemed appropriate by this Court. The above-described conduct is arbitrary, capricious, an abuse of discretion, otherwise not in accordance with law, and/or unsupported by substantial evidence. As a result of the foregoing, Pinebrook is entitled to an Order from this Court including without limitation the following:

a. issuing a declaratory judgment under 28 U.S.C. § 2201 that Pinebrook is entitled to loan forgiveness under the PPP Loan Program, in the amount of its original loan amount plus any applicable interest, under the plain language of the CARES Act;

b. issuing a declaratory judgment under 28 U.S.C. § 2201 that the interim regulations established by the SBA are not authorized by the CARES Act and are contrary to law, inapplicable to Pinebrook, and arbitrary and capricious;

c. issuing a declaratory judgment under 28 U.S.C. § 2201 that Respondents' denial of PPP loan forgiveness applications for businesses with NAICS Code 523900 (other financial activities) on the basis of their NAICS Code is arbitrary and capricious;

d. compelling Respondents under 5 U.S.C. § 706 and 28 U.S.C. § 2202 to retain appropriations in an amount sufficient to fund Pinebrook's loan forgiveness, including any applicable interest, under the PPP Loan Program;

e. compelling Respondents under 5 U.S.C. § 706 and 28 U.S.C. § 2202 to forgive Pinebrook's loan under the PPP Loan Program, including any applicable interest, consistent with the CARES Act and the SBA's interim regulations; and

20

f.  enjoining Respondents under 5 U.S.C. § 706 and 28 U.S.C. § 2202 from denying PPP

loan forgiveness applications for businesses with NAICS Code 523900 (other

financial activities) on the basis of their NAICS Code; and

g.  awarding costs and fees to the extent permitted by law; and

h.  granting such other relief as this Court may deem just and proper.


Dated: August 25, 2023                      */s/  Paul M. Croker*
                                            Paul M. Croker (57000MO)
                                            Angela B. Kennedy (69167MO)
                                            Onalee R. Yousey (72742MO)
                                            **ARMSTRONG TEASDALE LLP**
                                            7700 Forsyth Blvd., Suite 1800
                                            St. Louis, Missouri 63105
                                            (314) 621-5070 (telephone)
                                            (314) 621-5065 (facsimile)
                                            akennedy@atllp.com
                                            pcroker@atllp.com
                                            oyousey@atllp.com

                                            *Attorneys for Petitioner Pinebrook
                                            Holdings, LLC*